UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

TARAKAA BERTRAND,   CIVIL ACTION NO.

    Plaintiff,

v.

YALE UNIVERSITY,

    Defendant.

## COMPLAINT AND JURY DEMAND

Tarakaa Bertrand ("Plaintiff" or "Bertrand"), by and through her attorneys, as and for her Complaint against Yale University ("Yale"), hereby alleges the following:

### NATURE OF THE ACTION

1. This action is based on a breach of contract and sets forth claims for breach of contract and breach of the implied duty of good faith and fair dealing.

### PARTIES

1. Plaintiff is a resident of Great Falls, Virginia.
2. Yale is a private university with its principal place of business located in New Haven, Connecticut.

### JURISDICTION

3. This Court has jurisdiction under 28 U.S.C. § 1332(a)(1) because this is a civil action between citizens of different States and the matter in controversy exceeds the sum of $75,000 exclusive of interest and costs.

## FACTS

4. Plaintiff was employed as the Head Women's Tennis Coach at St. John's University until July 2014 when she was recruited by Yale to become its Head Women's Tennis Coach.

5. Plaintiff became employed by Yale as its Head Women's Tennis Coach pursuant to an Employment Agreement executed on July 9, 2014 (the "Agreement"), (annexed hereto as Exhibit A).

6. Pursuant to the Agreement, Plaintiff was employed as the Swensen-McMahon Head Women's Tennis coach for an initial five (5) year term.

7. Pursuant to the Agreement, Plaintiff's annual salary was $85,000.00.

8. Upon signing the Agreement, Plaintiff became the youngest head coach of a nationally ranked Division I women's tennis team.

9. Plaintiff's employment was "effective July 9, 2014 for an initial five year term."

10. Pursuant to the express terms of the Agreement, Yale could "terminate this employment agreement at any time 'For Cause.'"

11. Specifically, Section E of the Agreement defines "For Cause" as follows:

> "a conviction of a felony or of any criminal offense involving theft or fraud; willful participation in any acts of fraud, theft or dishonesty; material violation of any rules of the University, the NCAA, or the Ivy League. In the event of a termination 'For Cause' you will no longer be entitled to pay and benefits under this contract. Should the University choose to terminate this contract for any reason other than 'For Cause', you shall be entitled to full pay and benefits for the remaining portion of the Term of Agreement (and any extension for the remaining portion of the Term of Agreement (and any extension of same) and one month additional severance for each year of service."

12. By letter dated April 15, 2015, Thomas Beckett notified Plaintiff that "your employment with Yale University is terminated effective today, April 15, 2015" (the "Termination Letter").

13. The Termination Letter stated, *inter alia,* that Plaintiff was being terminated for alleged inappropriate communications with the members of the team and its assistant coach, violations of secondary NCAA regulations and violation of University policies and procedures.

14. Yale's alleged bases for Plaintiff's termination, either individually or in the aggregate, do not satisfy the materiality requirement for termination of the Agreement with Plaintiff.

15. Yale's termination letter contains outright lies, distortions of the truth and statements taken out of context.

16. Upon information and belief, Yale's compilation of Plaintiff's minor transgressions as laid out in the Termination Letter is a pretextual attempt to manufacture cause when none exists, in order to relieve Yale of its obligations under the Agreement.

17. In this regard, termination of Plaintiff based upon alleged secondary NCAA violations constitutes grossly disproportionate and fundamentally different treatment from Yale's treatment of other coaches who also committed secondary violations.

18. Upon information and belief, in the Fall 2014 Semester alone, other coaches at Yale committed sixteen (16) secondary violations. None of these coaches were terminated.

19. The NCAA secondary violations cited by Yale took place almost five (5) months before Plaintiff's termination.

20. Additionally, Matej Zlatkovic ("Zlatkovic"), Assistant Women's Tennis Coach, committed the same alleged NCAA secondary violations that Plaintiff committed and was not disciplined in any fashion. In fact, Zlatkovic was subsequently promoted to Head Women's Tennis Coach as Plaintiff's replacement.

21. Moreover, upon information and belief, Yale did not even report to the NCAA these alleged secondary violations that Yale contended were the basis for Plaintiff's termination, further underscoring the pretextual nature of Yale's position.

22. Under the Agreement, if Yale terminated Plaintiff "for any reason other than 'For Cause'", she is entitled to "full pay and benefits for the remaining portion of the Term of the Agreement."

## COUNT ONE- (BREACH OF CONTRACT)

23. Plaintiff repeats, realleges and incorporates by reference paragraphs 1 through 22 above as if set forth fully herein.

24. The Agreement is a valid and binding agreement between Plaintiff and Yale.

25. Plaintiff fully performed her obligations pursuant to the Agreement.

26. Yale terminated Plaintiff without cause and has failed to provide her with full pay and benefits as required by the Agreement.

27. By the acts and conduct described above, Yale has breached the Agreement with Plaintiff.

28. Plaintiff has been damaged as a result of Yale's breach of the Agreement.

29. Accordingly, because Yale terminated the Agreement without cause, Plaintiff is entitled to full pay and benefits for the remaining portion of the Term of the Agreement, *to wit*, four (4) years and two (2) months.

## COUNT TWO- (BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING)

30. Plaintiff repeats, realleges and incorporates by reference paragraphs 1 through 29 above as if set forth fully herein.

31. The Agreement between Plaintiff and Yale, like all contracts, includes an implied covenant of good faith and fair dealing.

32. In entering into the Agreement with Yale, Plaintiff reposed trust and confidence in Yale, to among other things, deal with Plaintiff fairly in all of their affairs.

33. Yale knew of and accepted such trust and confidence at the time Plaintiff entered into the Agreement with Yale.

34. In entering into the Agreement with Plaintiff, Yale impliedly covenanted that it would deal with Plaintiff fairly and in good faith, and would not capriciously or without good cause deprive Plaintiff of the benefits of the Agreement.

35. By the acts and conduct described above, including terminating the Agreement without cause on April 15, 2014, Yale violated the implied covenant of good faith and fair dealing.

36. Plaintiff has been damaged as a result of the defendants' breach of the implied covenant of good faith and fair dealing in an amount to be determined at trial.

JURY DEMAND

37. Plaintiff demands a jury trial on all claims.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court award the following relief:

1. Enter judgment in her favor on Counts I and II;

2. Attorneys' fees, expenses and costs; and

3. Such further relief as the Court may deem just and proper.

                RESPECTFULLY SUBMITTED
                THE PLAINTIFF,

By: _____
        Barbara J. Collins
Law Office of Barbara J. Collins
557 Prospect Avenue, Floor 1
Hartford, CT 06105

Milo Silberstein
(Pro Hac Vice Application to Be Filed)
DEALY SILBERSTEIN & BRAVERMAN, LLP
225 Broadway Suite 1405
New York, New York 10007
(212) 385-0066

# EXHIBIT A



# Yale University

Department of Athletics, Physical Education and Recreation

---

July 9, 2014

**CONFIDENTIAL**
Ms. Tarakaa Bertrand
8000 Utopia Parkway
Queens, NY 11439

Dear Ms. Bertrand:

I write to confirm Yale University's offer of employment to you as a Head Coach Women's Tennis effective July 9, 2014 for an initial five year term (FY15-FY19). As discussed, your annual salary will be $85,000 for twelve months and will be paid monthly at a rate of $7083.33 per month. You will be eligible for the benefits currently available to managerial and professional staff in accordance with the terms of the applicable policies. In addition to your salary, you will receive the following:

   1. Relocation expenses have been approved to assist you with your move to Connecticut. Qualified relocation expenses are limited to reasonable transportation expenses incurred in moving an employee's household goods and family from a prior home to a new home. Reimbursement of qualified relocation expenses is not considered additional taxable wages. Any payment or reimbursement of relocation expenses that is not considered qualified moving expenses or that is not substantiated in accordance with University policy is considered wages subject to withholding. It will be essential that you work with Ms. Diane Brown, Yale's Transportation Manager, as you make your moving arrangements. Once a signed copy of your offer letter is returned to Human Resources, you may reach out to Ms. Brown to begin coordination. She can be reached at 203-432-9961. These expenses must be utilized within one year from your start date and, in the unlikely event you voluntarily resign your position before having completed one year of service, you may be responsible for the repayment of all relocation expenses reimbursed to you within one month of your departure.

Federal law requires new employees to produce proof of identity and employability. Please read the enclosed pamphlet, "Immigration Reform and Control Act", and bring the necessary original identification and employment eligibility documents with you when you report to work.

As a new University employee, there are several important items you must attend to within the first two weeks of employment. Please refer to the attached schedule for information regarding these requirements. If you wish to seek veteran or disability status as an employee of the University, contact the Office of Equal Opportunity Programs at (203) 432-0849.

Enclosed are two original offer letters and agreements. Please indicate acceptance of the terms of this letter and the attached agreement by signing and returning one original offer letter and original agreement in the self addressed stamped envelope which has been included in your hire packet.

Ms. Tarakaa Bertrand, Head Coach Women's Tennis - Athletics Term Agreement

A. Term of Agreement

1. The Term of Agreement shall mean that your employment will commence on July 9, 2014 and expire on June 30, 2019, unless the expiration is otherwise extended in writing by the parties.

B. Salary

1. Your salary will be $85,000 annually, paid on a monthly basis of $7083.33. You will be eligible for salary increases in accord with the policies applicable to the University's managerial and professional employees. You will not be eligible for a merit increase September, 2014.
You will also receive a sign-on bonus in the amount of $5,000 which will be paid within the first three months of your employment.
2. Except for compensation you may receive as a result of conducting, coaching at, appearing at or otherwise participating in a tennis or other sports related camp as approved by the Director of Athletics and the University Provost, you agree not to receive additional compensation for your services either from the University or from other sources without prior approval of the Director of Athletics and of the University Provost.
3. Based on NCAA and Athletic Department regulations, all Athletic Department staff are required to provide a written detailed account annually to the chief executive officer for all athletically related income and benefits from sources outside the institution. In addition, the approval of all athletically-related income and benefits shall be consistent with the institution's policy related to outside income and benefits applicable to all employees. The University's policy is outlined in the enclosed Yale University Standards of Business Conduct. Sources of income include, but are not limited to, income from annuities, sports camps, housing benefits, country club memberships, complimentary ticket sales, television and radio programs, and endorsement or consultation contracts.

C. Benefits

1. You are eligible for the benefits provided to managerial and professional staff as described at http://www.yale.edu/hronline/benefits/mp.html.

2. Consistent with University policy, you will accrue 1.5 paid time off days per month to a maximum of 18 days per year. The maximum carryover days will be 15.

D. Duties
   1. You agree to perform all assigned duties with professional competence and in accordance with Departmental policies and budgetary guidelines.
   2. The Director of Athletics reserves the right to reassign duties, responsibilities and titles at any time during a term of employment when he deems it is in the best interest of the Department to do so.
   3. You agree to abide by all University policies applicable to managerial and professional staff, including not limited to the Yale University Standards of Business Conduct and the University policy on sexual misconduct and sexual harassment.
   4. You agree to familiarize yourself with the rules of the Ivy Group and NCAA that are applicable to your responsibilities and to abide by these rules meticulously in recruitment of secondary school students and in all other aspects of your duties. Any disregard of these rules constitutes a basis for discipline up to and including immediate dismissal. Any employee who is found in violation of the NCAA regulations shall be subject to disciplinary or corrective action as set forth in the provisions of the NCAA enforcement procedures, including suspension without pay or termination of employment.
   5. Incidental expenses that are incurred in the course of carrying out assigned duties and that have been authorized will be reimbursed by the Department upon submission of adequate documentation of these expenses and their purpose.
   6. Your duties as a head coach include but are not limited to the following: head coaching of the varsity team; recruiting of qualified secondary school students for participation on the team; assisting in the development of policy in connection with the team; budget management of the team; scheduling of team and individual practices; scheduling of games; specifying equipment which is budgeted and authorized; supervising the team during authorized trips; enforcing Department policies in connection with the team; supervising assistant coaches; assisting in alumni relations; promoting the image of the team; with the approval of the Director of Athletics and the University's Department of Human Resources, hiring, supervising, promoting, discipline and/or termination, of assistant coaches and other swimming staff; and other duties as may be assigned by the Director of Athletics. You will be supervised on administrative, policy and performance matters by the Director of Athletics and the Senior Associate Athletics Director.

E. Termination of Employment
   1. In view of the special nature of the relationship between the Department of Athletics and the Yale education program, the unusual qualities and skills required to implement an effective athletic program, and the very personal nature of the skills and services of athletic coaching, the University will be entitled to terminate this employment agreement at any time "For Cause". For purposes of this agreement, "For Cause" shall be defined as a conviction of a felony or of any criminal offense involving theft or fraud; willful participation in any acts of fraud, theft, or dishonesty; material violation of any rules of the University, the NCAA, or the Ivy League. In the event of a termination "For Cause", you will no longer be entitled to pay and benefits under this contract. Should the University choose to terminate this contract for any reason other than "For Cause", you shall be entitled to full pay and benefits for the remaining portion of the Term of Agreement (and any extension of same) and one month additional severance for each year of service.

F. Resignation

   1. In the event you decide to terminate this agreement voluntarily you agree to provide the University with 30 days' notice in writing.
   2. You agree that in the event that you resign or otherwise voluntarily terminate your employment you will pay to the University as liquidated damages and not as a penalty a sum pursuant to the following schedule:

   July 9, 2014 through June 30, 2015 the sum of $15,000.

   July 1, 2015 through June 30, 2016 the sum of $10,000.

   July 1, 2016 through June 30, 2017 the sum of $7,500.

   July 1, 2017 through June 30, 2018 the sum of $5,000.

   July 1, 2018 through June 30, 2019 the sum of $2,500.

G. Renewal
   1. The Department of Athletics may propose the renewal of an employment agreement at any time. There is no guarantee of renewal at the end of a term of employment.
   2. Notice of non-renewal shall be provided as follows: one month prior notice for each of the first six years of service and one-half month additional notice for each subsequent year of service, up to a maximum period of notice of 12 months. The minimum period of notice shall be three months

H. Grievances
   1. Coaches have available the managerial and professional grievance procedure pursuant to Yale grievance policies.

I. Applicable Law
   1. This agreement shall be governed by the laws of the State of Connecticut.

_____   07/09/2014
**Ms. Tarakaa Bertrand**
**NAME**                              **DATE**

_____   7/9/14
Thomas A. Beckett                     **DATE**
Director of Athletics, Yale University

Tarakaa Bertrand Offer Letter                                        July 9, 2014

We expect you to set an exemplary standard of fairness and integrity for our scholar athletes and to work cooperatively with your coaching colleagues in our Department of Athletics.

I am delighted to welcome you to Yale and I look forward to working with you in the years ahead.

Sincerely,

*Thomas A. Beckett (tg)*

Thomas A. Beckett
Director of Athletics

Accepted: _____

Date: 07/09/2014

TAB/feg

xc: Human Resources, Personnel File