UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TARAKAA BERTRAND | : | |
| | : | |
| Plaintiff | : | CIVIL ACTION NO.: |
| | : | 3:15-cv-01128-WWE |
| vs. | : | |
| | : | |
| YALE UNIVERSITY | : | |
| | : | |
| Defendant | : | |

## PLAINTIFF'S MOTION TO COMPEL DEFENDANT TO PRODUCE DOCUMENTS

Pursuant to Rules 34 and 37 of the Fed. R. Civ. P., Plaintiff Tarakaa Bertrand ("Plaintiff") moves this Court for an order compelling Defendant Yale University ("Defendant") to produce specific documents, namely the documents pertaining to any secondary violations of the rules promulgated by Yale, the National Collegiate Athletic Association ("NCAA") and/or the Ivy League that were committed by a Yale coach or assistant coach during the period of January 1, 2010 through June 30, 2015. In accordance with the Fed. R. Civ. P. 37(a) and Local Rule 37(a), Plaintiff certifies that she has conferred with Defendant in a good faith effort to resolve the issues raised herein without any court intervention, but has been unable to reach an agreement with Defendant.

For the reasons set forth in Plaintiff's Memorandum of Law in Support of her Motion to Compel Defendant to Produce Documents, Plaintiff respectfully requests that the Court enter an order compelling Defendant to produce the requested documents within a reasonable time, but on a date certain.

ORAL ARGUMENT REQUESTED

Dated:  New York, New York
        March 28, 2016

                            Respectfully submitted,

                            DEALY SILBERSTEIN
                            & BRAVERMAN, LLP

By: _____

                             Milo Silberstein
                          *Attorneys for Plaintiff Tarakaa*
                          *Bertrand*
                          225 Broadway, Suite 1405
                          New York, New York 10007
                          (212) 385-0066

                          Barbara J. Collins
                          Law Office of Barbara J. Collins
                          557 Prospect Avenue, Floor 1
                          Hartford, Connecticut 06105

## <u>CERTIFICATION</u>

I hereby certify that, on the above-written date, the foregoing Motion to Compel Defendant to Produce Documents was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing, as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's system.

Milo Silberstein

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

TARAKAA BERTRAND                    :
                                    :
        Plaintiff                   :           CIVIL ACTION NO.:
                                    :           3:15-cv-01128-WWE
        vs.                         :
                                    :
YALE UNIVERSITY                     :
                                    :
        Defendant                   :

**AFFIRMATION OF MILO SILBERSTEIN, ESQ. IN SUPPORT OF PLAINTIFF'S
MOTION TO COMPEL DEFENDANT TO PRODUCE DOCUMENTS**

MILO SILBERSTEIN, ESQ. affirms the following under penalty of perjury:

1. I am a member of Dealy Silberstein & Braverman, LLP, 225 Broadway, Suite 1405, New York, New York 10007.

2. I am counsel of record for Plaintiff Tarakaa Bertrand ("Plaintiff") and am fully familiar with the matters set forth herein.

3. I submit this Affirmation in support of Plaintiff's Motion to Compel Defendant Yale University ("Defendant" and/or "Yale") to Produce Documents (the "Motion") pursuant to Local Rule 37(a).

4. On July 9, 2014, Plaintiff and Defendant executed an Employment Agreement whereby Plaintiff was employed by Defendant as the Head Women's Tennis Coach for a five-year term (the "Employment Agreement").

5. A true and correct copy of the Employment Agreement is annexed hereto as Exhibit A.

6. Pursuant to express terms within the Employment Agreement, Defendant could terminate Plaintiff at any time for "cause".

7.  The Employment Agreement specifically defined cause as: "a conviction of a felony or of any criminal offense involving theft or fraud; willful participation in any acts of fraud, theft or dishonesty; material violation of any rules of the University, the NCAA, or the Ivy League."

8.  By letter dated April 15, 2015, Thomas Beckett, Director of Athletics for Defendant, notified Plaintiff that she had been terminated as of the date of the letter (the "Termination Letter").

9.  A true and correct copy of the Termination Letter is annexed hereto as Exhibit B.

10. The Termination Letter stated that Plaintiff was terminated for, *inter alia*, secondary violations of the National Collegiate Athletic Association's ("NCAA") regulations and University policies and procedures.

11. Upon information and belief, other coaches and assistant coaches who worked or continue to work for Defendant were not terminated for committing secondary NCAA violations.

12. On July 23, 2015, Plaintiff filed a Complaint against Defendant, alleging that Defendant did not properly terminate Plaintiff for cause, thereby breaching the Employment Agreement and entitling Plaintiff to the remaining balance of her salary pursuant to the Employment Agreement.

13. On or about September 29, 2015, Plaintiff served her First Request to Defendant for the Production of Documents ("Plaintiff's Request"), wherein Plaintiff requested that Defendant provide "[a]ll documents referring or relating to any secondary violation by a Yale coach or assistant coach of Yale, NCAA and/or the Ivy League rules, during the

period of January 1, 2010 through June 30, 2015, and the treatment meted out for each violation."

14. A true and correct copy of Plaintiff's Request is annexed hereto as Exhibit C.

15. In its formal responses dated November 4, 2015, Defendant objected to producing documents pertaining to any secondary violations of Yale, the NCAA and/or the Ivy League rules committed by Yale's coaches or assistant coaches.

16. Plaintiff's counsel has conferred with Defendant's counsel, on multiple occasions, in a good faith effort to resolve the specific issues raised in the Motion without the intervention of the Court.

17. Specifically, by letter dated November 12, 2015, Plaintiff's counsel requested, *inter alia*, that Defendant produce all documents relating to any secondary violations of Yale, the NCAA and/or the Ivy League rule that were committed by Yale's coach or assistant coaches from January 1, 2010 through June 30, 2015.

18. By letter dated November 19, 2015, Defendant's counsel rejected the aforementioned request, alleging that the documents were not pertinent in a breach of contract action.

19. Thereafter, by letter dated November 25, 2015, Plaintiff's counsel reiterated its request, stating that the aforementioned documents are relevant to the underlying dispute.

20. The parties further conferred about this matter over the phone and have been unable to reach an agreement regarding this issue, thereby necessitating the filing of the Motion.

Dated: New York, New York
       March 28, 2016

                                          MILO SILBERSTEIN

3

## CERTIFICATION

I hereby certify that, on the above-written date, the foregoing Affirmation in Support of Plaintiff's Motion to Compel Defendant to Produce Documents was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing, as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's system.

Milo Silberstein

# EXHIBIT A



# Yale University

### Department of Athletics, Physical Education and Recreation

July 9, 2014

**CONFIDENTIAL**
Ms. Tarakaa Bertrand
8000 Utopia Parkway
Queens, NY 11439

Dear Ms. Bertrand:

I write to confirm Yale University's offer of employment to you as a Head Coach Women's Tennis effective July 9, 2014 for an initial five year term (FY15-FY19). As discussed, your annual salary will be $85,000 for twelve months and will be paid monthly at a rate of $7083.33 per month.   You will be eligible for the benefits currently available to managerial and professional staff in accordance with the terms of the applicable policies.  In addition to your salary, you will receive the following:

1.  Relocation expenses have been approved to assist you with your move to Connecticut.  Qualified relocation expenses are limited to reasonable transportation expenses incurred in moving an employee's household goods and family from a prior home to a new home.  Reimbursement of qualified relocation expenses is not considered additional taxable wages.  Any payment or reimbursement of relocation expenses that is not considered qualified moving expenses or that is not substantiated in accordance with University policy is considered wages subject to withholding.  It will be essential that you work with Ms. Diane Brown, Yale's Transportation Manager, as you make your moving arrangements.  Once a signed copy of your offer letter is returned to Human Resources, you may reach out to Ms. Brown to begin coordination.  She can be reached at 203-432-9961.  These expenses must be utilized within one year from your start date and, in the unlikely event you voluntarily resign your position before having completed one year of service, you may be responsible for the repayment of all relocation expenses reimbursed to you within one month of your departure.

Federal law requires new employees to produce proof of identity and employability.  Please read the enclosed pamphlet, "Immigration Reform and Control Act", and bring the necessary original identification and employment eligibility documents with you when you report to work.

As a new University employee, there are several important items you must attend to within the first two weeks of employment.  Please refer to the attached schedule for information regarding these requirements.  If you wish to seek veteran or disability status as an employee of the University, contact the Office of Equal Opportunity Programs at (203) 432-0849.

Enclosed are two original offer letters and agreements.  Please indicate acceptance of the terms of this letter and the attached agreement by signing and returning one original offer letter and original agreement in the self addressed stamped envelope which has been included in your hire packet.

P.O. Box 208216  •  New Haven, CT 06520-8216  •  (203) 432-4747  •  Fax (203) 432-7772

Ms. Tarakaa Bertrand, Head Coach Women's Tennis  - Athletics Term Agreement

A.  Term of Agreement

1.  The Term of Agreement shall mean that your employment will commence on July 9, 2014 and expire on June 30, 2019, unless the expiration is otherwise extended in writing by the parties.

B.  Salary

1.  Your salary will be $85,000 annually, paid on a monthly basis of $7083.33.  You will be eligible for salary increases in accord with the policies applicable to the University's managerial and professional employees.   You will not be eligible for a merit increase September, 2014.
You will also receive a sign-on bonus in the amount of $5,000 which will be paid within the first three months of your employment.

2.  Except for compensation you may receive as a result of conducting, coaching at, appearing at or otherwise participating in a tennis or other sports related camp as approved by the Director of Athletics and the University Provost, you agree not to receive additional compensation for your services either from the University or from other sources without prior approval of the Director of Athletics and of the University Provost.

3.  Based on NCAA and Athletic Department regulations, all Athletic Department staff are required to provide a written detailed account annually to the chief executive officer for all athletically related income and benefits from sources outside the institution. In addition, the approval of all athletically-related income and benefits shall be consistent with the institution's policy related to outside income and benefits applicable to all employees. The University's policy is outlined in the enclosed Yale University Standards of Business Conduct. Sources of income include, but are not limited to, income from annuities, sports camps, housing benefits, country club memberships, complimentary ticket sales, television and radio programs, and endorsement or consultation contracts.

C.  Benefits

1.  You are eligible for the benefits provided to managerial and professional staff as described at http://www.yale.edu/hronline/benefits/mp.html.

2.  Consistent with University policy, you will accrue 1.5 paid time off days per month to a maximum of 18 days per year.  The maximum carryover days will be 15.

D. **Duties**

1. You agree to perform all assigned duties with professional competence and in accordance with Departmental policies and budgetary guidelines.

2. The Director of Athletics reserves the right to reassign duties, responsibilities and titles at any time during a term of employment when he deems it is in the best interest of the Department to do so.

3. You agree to abide by all University policies applicable to managerial and professional staff, including not limited to the Yale University Standards of Business Conduct and the University policy on sexual misconduct and sexual harassment.

4. You agree to familiarize yourself with the rules of the Ivy Group and NCAA that are applicable to your responsibilities and to abide by these rules meticulously in recruitment of secondary school students and in all other aspects of your duties. Any disregard of these rules constitutes a basis for discipline up to and including immediate dismissal. Any employee who is found in violation of the NCAA regulations shall be subject to disciplinary or corrective action as set forth in the provisions of the NCAA enforcement procedures, including suspension without pay or termination of employment.

5. Incidental expenses that are incurred in the course of carrying out assigned duties and that have been authorized will be reimbursed by the Department upon submission of adequate documentation of these expenses and their purpose.

6. Your duties as a head coach include but are not limited to the following: head coaching of the varsity team; recruiting of qualified secondary school students for participation on the team; assisting in the development of policy in connection with the team; budget management of the team; scheduling of team and individual practices; scheduling of games; specifying equipment which is budgeted and authorized; supervising the team during authorized trips; enforcing Department policies in connection with the team; supervising assistant coaches; assisting in alumni relations; promoting the image of the team; with the approval of the Director of Athletics and the University's Department of Human Resources, hiring, supervising, promoting, discipline and/or termination, of assistant coaches and other swimming staff; and other duties as may be assigned by the Director of Athletics. You will be supervised on administrative, policy and performance matters by the Director of Athletics and the Senior Associate Athletics Director.

E.   Termination of Employment

    1.   In view of the special nature of the relationship between the Department of Athletics and the Yale education program, the unusual qualities and skills required to implement an effective athletic program, and the very personal nature of the skills and services of athletic coaching, the University will be entitled to terminate this employment agreement at any time "For Cause". For purposes of this agreement, "For Cause" shall be defined as a conviction of a felony or of any criminal offense involving theft or fraud; willful participation in any acts of fraud, theft, or dishonesty; material violation of any rules of the University, the NCAA, or the Ivy League. In the event of a termination "For Cause", you will no longer be entitled to pay and benefits under this contract. Should the University choose to terminate this contract for any reason other than "For Cause", you shall be entitled to full pay and benefits for the remaining portion of the Term of Agreement (and any extension of same) and one month additional severance for each year of service.

F.   Resignation

    1.   In the event you decide to terminate this agreement voluntarily you agree to provide the University with 30 days' notice in writing.

    2.   You agree that in the event that you resign or otherwise voluntarily terminate your employment you will pay to the University as liquidated damages and not as a penalty a sum pursuant to the following schedule:

July 9, 2014 through June 30, 2015 the sum of $15,000.

July 1, 2015 through June 30, 2016 the sum of $10,000.

July 1, 2016 through June 30, 2017 the sum of $7,500.

July 1, 2017 through June 30, 2018 the sum of $5,000.

July 1, 2018 through June 30, 2019 the sum of $2,500.

G. Renewal

1. The Department of Athletics may propose the renewal of an employment agreement at any time. There is no guarantee of renewal at the end of a term of employment.

2. Notice of non-renewal shall be provided as follows: one month prior notice for each of the first six years of service and one-half month additional notice for each subsequent year of service, up to a maximum period of notice of 12 months. The minimum period of notice shall be three months

H. Grievances

1. Coaches have available the managerial and professional grievance procedure pursuant to Yale grievance policies.

I. Applicable Law

1. This agreement shall be governed by the laws of the State of Connecticut.

_____        _____07/09/2014_____

**Ms. Tarakaa Bertrand**

**NAME**                                                     **DATE**

_____        _____7/9/14_____

Thomas A. Beckett                                       **DATE**

Director of Athletics, Yale University

Tarakaa Bertrand Offer Letter

July 9, 2014

We expect you to set an exemplary standard of fairness and integrity for our scholar athletes and to work cooperatively with your coaching colleagues in our Department of Athletics.

I am delighted to welcome you to Yale and I look forward to working with you in the years ahead.

Sincerely,

*Thomas A. Beckett (fg)*

Thomas A. Beckett
Director of Athletics

Accepted:

Date: 07/09/2014

TAB/feg

xc: Human Resources, Personnel File

# EXHIBIT B



# Yale University

**Department of Athletics, Physical Education and Recreation**

Office of the Director                                                      April 15, 2015

Ms. Tarakaa Bertrand
376 Whitney Ave, Unit 3
New Haven, CT 06511

I am, by this letter, notifying you that your employment with Yale University is terminated effective today, April 15, 2015.

On Thursday, April 9, 2015 we met to discuss several significant issues of concern that were brought to my attention. In this meeting you admitted to the following:

- Inappropriate communications with your team and assistant coach.  Example of these comments include the following: negative public comments about the student athlete's abilities and questioning the integrity of team members; and telling your team that you "strangled" one of your former St. John's players. In addition, knowing about an unfortunate car accident that the Cornell men's tennis team was in on the way to a match, you made an inappropriate and unprofessional comment to the Yale team in response to a few members of the Cornell men's team heckling the Yale women. You threatened to fire your assistant coach and told him you do not trust him. These inappropriate statements reflect a lack of the integrity and leadership qualities we expect of our coaches.

- Violation, on at least two occasions, of NCAA regulations.  Specifically, you watched potential recruits' tennis sessions with current players. You admitted that you were aware this was a violation, yet you responded to students who raised concerns "I will run this program the way I see fit." This type of behavior and attitude cannot be tolerated.

- Violation of University policies and procedures.  You violated both departmental and University policy and procedure when you offered admissions support to a prospective student athlete, and then within 2-3 days rescinded the offer because you believed you had found a better recruit. In addition to being a direct violation of policy and procedures, this act has a significant impact on the reputation and integrity of the University.

These acts are in direct violation of Section E.1. of your Athletics Term Agreement.  Per that agreement, the University is entitled to terminate your employment contract at any time "For Cause".  One of the definitions of "For Cause" is a material violation of any rules of the University, the NCAA, or the Ivy League.

In addition, you did not adhere to strict directions from me on April 9th not to contact any member of the team (either players or coaches) regarding what we had discussed, as it would be viewed as retaliatory and a serious offense. Not only did you not adhere to this direction by contacting your Assistant Coach, you did so within two hours of the directive.

Therefore, we have concluded that your employment with Yale University will be terminated immediately "For Cause".

You will receive the balance of your Paid Time Off, which covers your accrued, unused Paid Time Off time as of today. Your health and dental insurance will continue through the end of April 2015. You may continue these benefits through direct payment to the Benefits Office through a COBRA plan.  Materials concerning this option will be mailed to you or you may call the Benefits Office at (203) 432-5550.   We will mail your final paycheck along with your unemployment compensation slip to your home address.

You have the right, should you disagree with any of the information contained herein, to submit a written statement explaining your position.  This statement will be maintained as part of your personnel file.  Please deliver this statement directly to your supervisor or your HR Generalist.

Sincerely,


Thomas Beckett
Director of Athletics
Yale University

Cc:     Barbara Chesler, Senior Associate Athletics Director
        Francine Georges, Human Resources Generalist, Athletics
        Lauren Storer, Associate Director, Employee Relations

# EXHIBIT C

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

TARAKAA BERTRAND,                          CIVIL ACTION NO. 15-CV-01128

       Plaintiff,

   v.

YALE UNIVERSITY,

       Defendant.

## PLAINTIFF'S FIRST REQUEST TO DEFENDANT
## FOR THE PRODUCTION OF DOCUMENTS

PLEASE TAKE NOTICE, that pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiff Tarakaa Bertrand ("Bertrand"), hereby requests that, within thirty (30 days of the date of service hereof, Defendant Yale University ("Yale") produce for inspection and copying the documents described in the following requests that are within Yale's possession, custody or control.  Please produce all documents by mail, hand delivery or electronic mail to: Milo Silberstein, Esq., Dealy Silberstein & Braverman, LLP, 225 Broadway, Suite 1405, New York, New York 10007, msilberstein@dsblawny.com.

### DEFINITIONS

1.    "Bertrand" shall mean Tarakaa Bertrand.

2.    "Yale" shall mean Yale University and all its officers, directors, employees, partners, affiliates, consultants and agents.

3.    "Employee" refers to any person, including but not limited to all officers, executives, managers, supervisors, professionals, hourly and salaried personnel, who were employed on a full or part-time basis or on a temporary or permanent basis.

4.    "Communication" means correspondence and all other transmittals of information (in the form of facts, ideas, inquiries, or otherwise).

5.    "Documents" shall include any writing or record of any type or description, including but not limited to originals (or, if applicant lacks the original, whatever type of copy it has), non-duplicative copies and copies with marginal notes, of agreements, correspondence, e-mail correspondence, letters, telegrams, inter-office and intra-office communications, memoranda, reports, records, instructions, specifications, notes, notebooks, scrapbooks, diaries, minutes, minutes of meetings, plans, drawings, sketches, blueprints, photographs, photocopies, charts, curves, descriptions, invoices, purchase orders, bills of lading, motion pictures, recordings, published or unpublished speeches or articles, publications, transcripts, and any other retrievable data however recorded, memorialized or preserved, in the possession, custody or control of applicant or known to applicant, wherever the same may be located, however produced or reproduced, including any non-identical copy, where differing from an original or another version thereof because of any alterations, notes, comments or other material contained thereon or attached thereto, or otherwise, and whether a draft or a final version.

6.    "Describe" means to specify in detail and to particularize the contents of the answer to the question and not just to state the reply in summary or outline fashion.

7.    "Personnel file" means not only applications for employment, evaluations, performance-related documents and the like, commonly kept in some central place and called by that name or something similar, but also all other documents concerning or primarily concerning the person referred to, regardless of where kept and regardless of by whom prepared, including notes taken during conversations with the person, notes taken during conversations about the person, memoranda and letters exchanged with the person and those exchanged with other persons, but

2

concerning the person, correspondence with any employment service concerning the person, records of all communications with other employees concerning the person, investigative files and reports concerning or substantially concerning the person identified.

8.     "Concerning" means relating to, referring to, describing, evidencing or constituting.

9.     "Address" shall mean the present or last known street name and number, city or town, state and zip code of the person or entity in question.

10.    "All/Each" term means "all" and "each" shall be construed as all and each.

11.    "And/Or." The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

12.    "Number." The use of the singular form of any word includes the plural and vice versa.

## INSTRUCTIONS

1.     Pursuant to Rule 26(b) of the Federal Rules of Civil Procedure and Local Rule 26(e), where a claim of privilege or work product protection is asserted in response to a request for documents or electronically stored information, Yale must provide the following information in the form of a privilege log:

     a.  The type of document or electronically stored information;

     b.  The general subject matter of the document or electronically stored information;

     c.  The date of the document or electronically stored information;

     d.  The author of the document or electronically stored information; and

     e.  Each recipient of the document or electronically stored information.

2.     Yale shall produce the documents requested below in electronic format where possible.

3

3.      Pursuant to Rule 34(b) of the Federal Rules of Civil Procedure, the documents produced should be organized and labeled to correspond with the request to which they are responsive.

4.      If any document requested herein was formerly in Yale's possession, control, or custody and has been lost or destroyed, or otherwise disposed of, Yale is requested to submit in lieu of any such document a written statement: (i) describing in detail the nature of the document as to its contents; (ii) identifying the person(s) who prepared or authored the document and, if applicable, the person(s) to whom the document was sent and indicated or blind copies; (iii) specifying the date on which the document was prepared or transmitted; and (iv) specifying, if ascertainable, the date on which the document was lost or destroyed and, if destroyed, the conditions of and reasons for such destruction and the persons requesting and performing the destruction.

5.      If any document relates in any manner to a meeting or to any other conversation, all participants in the meeting or conversation are to be identified.

6.      This document request is a continuing one and any document obtained subsequent to production which would have been produced had it been available or its existence been known at the time of production specified herein is to be supplied herewith.

7.      All responsive electronically stored information ("ESI") shall be produced in the format outlined in Appendix 1 and according to the ESI Guidelines contained in Appendix 2.

<u>DOCUMENTS REQUESTED</u>

1.  All documents constituting, referring or relating to the contract, effective July 9, 2014, between Yale and Bertrand (the "Contract").

2.  All drafts and non-duplicate copies of the Contract that bear any annotations and/or markings.

4

3. All documents constituting, referring or relating to negotiations of the Contract.

4. All documents constituting, referring or relating to discussions with Bertrand before execution of the Contract.

5. Yale's Human Resources file[s] on Bertrand.

6. All drafts and non-duplicate copies of the termination letter, dated April 15, 2015, from Thomas A. Beckett ("Beckett") to Bertrand (the "Termination Letter") that bear any annotations and/or markings.

7. All documents scheduling, referring or relating to the April 9, 2015 meeting mentioned in the Termination Letter.

8. All documents containing a review, comments on, or discussions of the April 9, 2015 meeting.

9. All documents constituting, referring or relating to the alleged "inappropriate communications" and/or "comments" mentioned in the first bullet point of the Termination Letter.

10. All documents identifying the source or sources of the allegations set forth in the first bullet point of the Termination Letter.

11. A copy of each NCAA regulation referred to in the second bullet point of the Termination Letter.

12. All documents constituting, referring or relating to Bertrand's alleged response[s] to students, as alleged in the second bullet point of the Termination Letter.

13. All documents identifying the source or sources of the allegations set forth in the second bullet point of the Termination Letter.

14. A copy of each Yale policy, rule and/or procedure that Bertrand allegedly violated, as alleged in the third bullet point of the Termination Letter.

15. All documents constituting, referring or relating to the alleged violation specified in the third bullet point of the Termination Letter.

16. All documents constituting, referring or relating to Beckett's alleged authority to issue a directive to Bertrand, as alleged in the antepenultimate paragraph of the Termination Letter, that contacting either players or coaches regarding what Bertrand and Beckett discussed on April 9, 2015 would be viewed as retaliatory and a serious offense.

17. All documents constituting, referring or relating to Bertrand's allegedly contacting her Assistant Coach regarding her discussion with Beckett on April 9, 2015, as alleged in the antepenultimate paragraph of the Termination Letter.

18. All documents constituting, referring or relating to any notice or warning given to Bertrand at Yale before her April 9, 2015 meeting with Beckett.

19. All documents, that (a) identify each person present for the whole or any part of the April 9, 2015 meeting, referred to in the Termination Letter, and (b) state, in whole or in part, what was said or discussed during the meeting.

20. All documents referring or relating to Matej Zlatkovic, and/or any other coach or assistant coach, watching one or more recruits hit or otherwise practice while on the Yale campus during the period from January 1, 2014 to June 30, 2015.

21. A copy of each specific NCAA rule and Ivy League rule that Bertrand is alleged to have violated.

22. All documents that refer or relate to each alleged violation by Bertrand of a Yale rule, NCAA rule and /or Ivy League rule.

6

23. All documents constituting, referring or relating to evaluation of Bertrand's performance of her job at Yale.

24. All documents referring or relating to the disciplining and/or termination of any Yale sports team coach, assistant coach or other member of the coaching staff during the period from January 1, 2010 to June 30, 2015.

25. All documents referring or relating to any secondary violation by a Yale coach or assistant coach of Yale, NCAA and/or the Ivy League rules, during the period from January 1, 2010 to June 30, 2015, and the treatment meted out for each violation.

26. All documents referring or relating to Bertrand that were sent to and/or received from any member of the Dawson and/or Amos families.

27. All documents referring or relating to Bertrand that are contained in Yale's files on members of the Dawson and/or Amos families.

28. All documents constituting, referring or relating to Yale reporting to the NCAA any of Bertrand's alleged violations of NCAA rules.

29. All documents constituting, referring or relating to issuance or withdrawal of a "letter of distinction" or a "likely" letter for any student-athlete at Yale during the period from January 1, 2010 to June 30, 2015.

30. All documents constituting, referring or relating to any instruction by Margit Dahl, Debra Johns and/or Beckett regarding recruiting Caroline Amos and/or Caroline Xie.

31. All documents referring or relating to recruiting Caroline Xie, including communications by Ms. Xie regarding Bertrand.

32. All documents referring or relating to recruiting Amy Yang, including communications by Ms. Yang regarding Bertrand.

7

33. All documents referring or relating to recruiting Caroline Amos, including communications by Ms. Amos regarding Bertrand.

34. All documents constituting, referring or relating to communications between Bertrand and Margit Dahl.

35. All documents constituting, referring or relating to communications between Bertrand and Debra Johns.

36. All documents referring or relating to Bertrand in Beckett's possession, custody or control.

37. All documents referring or relating to Bertrand in the possession, custody or control of Peter Salovey, President of Yale.

38. All documents referring or relating to Bertrand in the possession, custody or control of Barbara Chesler, Senior Associate Athletic Director Varsity.

39. All documents referring or relating to Bertrand in the possession, custody or control of Angela Gleason, the faculty liaison to the women's teams.

40. All documents referring or relating to Bertrand in the possession, custody or control of Francine Georges.

41. All documents referring or relating to Bertrand in the possession, custody or control of Forrest Temple.

42. All documents referring or relating to Carolyn Xie and/or Caroline Amos that were, or still are, in the possession, custody or control of Fritz Rodriguez, former Yale admissions liaison to athletics.

43. All documents containing, referring or relating to comments regarding Bertrand by Meghan McMahon.

8

44. All documents containing, referring or relating to comments regarding Bertrand by Hanna Yu.

45. All documents containing, referring or relating to comments regarding Bertrand by Ree Ree Li.

46. All other documents referring or relating to the alleged grounds for Bertrand's termination.

47. All other documents referring or relating to the claims or defenses in this action.

48. All written reports received from each individual that Yale proposes as an expert witness in this action.

49. All documents that Yale intends to use for any purpose at trial or during depositions to the extent not otherwise produced.

Dated: New York, New York
       September 29, 2015

DEALY SILBERSTEIN &
BRAVERMAN, LLP

By: _____
        Milo Silberstein
*Attorneys for Plaintiff Tarakaa Bertrand*
225 Broadway, Suite 1405
New York, New York 10007
(212) 385-0066

Barbara J. Collins
Law Office of Barbara J. Collins
557 Prospect Avenue, Floor 1
Hartford, CT 06105

9

## APPENDIX 1

### Plaintiff's Requested Electronically Stored Information Production Format

All references to "documents" in any of Plaintiff's requests shall be interpreted to include electronically stored information ("ESI"). ESI includes all types of computer-based information and electronic information stored in any medium, including but not limited to email.

The responding party shall disclose and produce all responsive ESI as it is kept in the usual course of business or must label all responsive ESI to correspond to the categories in the relevant discovery request or disclosure.

Plaintiff requests that the responding party disclose and/or produce all ESI that is relevant, not privileged, and reasonably accessible. The responding party must also identify, by category or type, the sources containing potentially responsive information that it is neither searching nor producing. The identification should, to the extent possible, provide enough detail to enable Plaintiff to evaluate the burdens and costs of providing the discovery and the likelihood of finding responsive information on the identified sources. However, the responding party's identification of sources of ESI as not reasonably accessible does not relieve the party of its common-law or statutory duties to preserve evidence.

Plaintiff requests that all ESI be produced in "native" format, together with (a) well-formed comma separated values (CSV) exported format and (b) an "imaged" file with the corresponding "image load file," "OCR text file," and the "associated metadata database."

E-mail shall be produced in electronic form in a manner that preserves the relationship between each e-mail and all of its attachments, as well as in "imaged" files.  Information from each e-mail header field should be produced in an "associated metadata database."  Any attachments to an e-mail should be produced in the electronic form in which they ordinarily are maintained, as well as in an "imaged" file with the corresponding "image load file," "OCR text file," and the "associated metadata database."

In all ESI productions, all available information about unitization (including the production number of the first and last page of each document), internal linkages, information about attachments (including information sufficient to identify the parent and child relationships of all documents and ESI that are or have attachments) and information about hyperlinked fields should be provided.  Unless a production of documents/ESI can be made on a single DVD, Plaintiff requests that the production be made on one or more hard drives.

The key concepts are explained below.

1. **Native:** the format in which the electronically stored information was originally created (*e.g.*, Microsoft Word, Microsoft Excel, Microsoft Access, PeopleSoft) and as it is kept in the ordinary course of business. A file path to the native file shall be provided in the metadata database as described in more detail below.

2. **Imaged:** a TIFF image converted from the native file as it was originally created.

11

a. All images may be in black-and-white format.

b. Bates numbers shall be branded to the images so that the numbers print on the bottom right corner of the document.

c. Images shall be single-page TIFFs or one TIFF file for each page (not multi-page TIFFs or one TIFF file for document) at 300 dpi.

d. Each image will bear any applicable confidentiality language pursuant to the parties' protective order on the bottom right corner of the document.

3. **Image Load File**: A load file in a DII standard load format which provides:

a. the document number for each image;

b. all available information regarding unitization (including the production number of the first and last page of each document);

c. the full path name(s) of each TIFF that represents an image;

d. all available information regarding attachments (including information sufficient to identify the parent and child relationships of all documents and ESI that are or have attachments);

e. the document boundaries for each document or family member grouping consisting of the following:

12

i. Each record, including the last record, should be terminated with a carriage return or carriage return/line feed pair;

ii. Note that the first record for any given document indicates that fact by flagging column 4, and lists the total number of pages in column 7;

iii. The load file shall be in the order that appropriately corresponds with each image file;

iv. The following represents the format of a standard DII load file:

DII Files:

*E-Form:*

@FULLTEXT DOC; Record 1

@T TOS00131253

@BATESBEG TOS00131253

@BATESEND TOS00131253

@C PARENTID

@C ATTCHID

@D @I\TOS_VOL_022\IMAGES\001\

13

TOS00131253.tif

4. **OCR Text File:** An OCR text file which corresponds to each imaged document shall be provided as follows:

      a. One OCR text file for each imaged document, not one OCR text file for each imaged page;

      b. Images shall be one TXT file for each document in multipage OCR format;

      c. OCR text located in the same directory as the images;

      d. OCR text files should be in ascii format

      e. Lines and breaks in the original imaged document should be preserved and lines should be separated by line feeds or CR-LF pairs; and

      f. The OCR file name should be the same as the name of the image file, followed by .txt.

5. **Associated Metadata Database:** a database shall be provided that extracts metadata (including but not limited to field headings and contents, information about unitization and internal linkages, information about attachments, and information about hyperlinked fields) into fields in a database load file, and also

14

includes a file path link to the native file. The fielded data should adhere to the following parameters where possible:

    a. Avoid escape characters, carriage return/line feed combinations, embedded separators and embedded carriage returns in all fielded data;

    b. Bates number fields cannot contain spaces or the / \ characters;

    c. Data files should use standard Concordance delimiters;

    d. All data types should be delimited, not just text;

    e. Multi-value fields should use semi-colons ";" as their separator;

    f. Data cannot contain tabs or carriage returns;

    g. Each record including the last record should be terminated with a carriage return or carriage return/line feed pair;

    h. The preferred date format is MM/DD/YYYY;

    i. The data file should contain a header; and

    j. The following is a sample data file:

    6. Exception Files: All files that cannot be produced or imaged due to technical difficulties shall be identified as exception files and identified on a log listing the file's name, custodian, and reason for the exception. Common exception files include, without limitation, corruption, password protection, digital rights

15

management, or proprietary software associated to the file.

## APPENDIX 2

### ESI Guidelines

These Guidelines are intended solely to facilitate the production of ESI

("electronically stored information"), to avoid misunderstandings concerning ESI, and to

highlight good-faith disagreements about ESI so that they may be promptly resolved. They are

not intended to expand (or contract) counsel's obligations under the Rules of the American

Arbitration Association.

1.   **What ESI Is.** ESI includes: e-mail; text messaging (corporate and

internet based); voice messaging systems; electronic files stored on servers,

desktops, laptops, and other removable media; and electronic data stored in

databases.

2.   **E-mail Collection.** During collection of e-mail the complete

mailbox should be captured. This includes sent folders, deleted folders, archived

folders, and all other folder structures within a mailbox.

3.   **Purging Systems.** "Self-purging" or "sweep-and-keep" policies

are often implemented on an organization's e-mail system. A self-purging system

automatically deletes e-mail messages located in specific folders after a certain

number of days. Sweep-and-keep systems collect and retain all incoming or

outgoing e-mail, regardless of content. Self-purging systems should be

17

deactivated if they are in violation of the litigation hold. Sweep-and-keep systems need not be deactivated, but steps should be taken to ensure that the "swept and kept" e-mail is collected as part of the collection of e-mail generally.

4. **Locations of ESI.** All network servers, desktops and laptops, removable media (*e.g.*, hand held devices, iPods, thumb or flash drives, external hard drives, tape, CD or DVD) containing ESI should be considered during collection. In addition, counsel should not overlook these locations for ESI:

- **Remote Locations.** Branch, satellite, or subsidiary offices.

- **Internal Websites.** Often organizations implement internal or intranet websites, which, of course, contain ESI.

- **Third Party Storage.** Off-site or third-party data storage either in physical removable media or real-time data hosting/archive (*e.g.*, e-mail archival services provided by ZANTAZ, Inc. or Iron Mountain Incorporated).

- **Personal Computers.** Employees' or contractors' personal computers often contain ESI.

- **Former Employees.** ESI from transferred or past employees may have been moved from a shared location to a separate employee archive location.

- **Old Systems.** Decommissioned or old computer systems no longer in use may contain ESI and should also be considered during collection.

18