UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

TARAKAA BERTRAND          :
                          :
   Plaintiff              :          CIVIL ACTION NO.:
                          :          3:15-cv-01128-WWE
   vs.                    :
                          :
YALE UNIVERSITY           :
                          :
   Defendant              :

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HER MOTION TO
<u>COMPEL DEFENDANT TO PRODUCE DOCUMENTS</u>**

DEALY SILBERSTEIN
& BRAVERMAN, LLP
Milo Silberstein, Esq.
*Attorneys for Plaintiff Tarakaa
Bertrand*
225 Broadway, Suite 1405
New York, New York 10007
(212) 385-0066

## TABLE OF CONTENTS

**TABLE OF CONTENTS**……………………………………………………………………...i

**TABLE OF AUTHORITIES**………………………………………………………………ii

**PRELIMINARY STATEMENT**…………………………………………………………1

**STANDARD OF REVIEW**………………………………………………………………...1

**FACTUAL BACKGROUND**……………………………………………………………2

**ARGUMENT**…………………………………………………………………………...3

**CONCLUSION**………………………………………………………………………4

# TABLE OF AUTHORITIES

**Cases:**

*Ferguson v. TD Bank, N.A.,*
268 F.R.D. 153 (D. Conn. 2010)………………………………………………………………3

*Maresco v. Evans Chemetics, Div. of W.R. Grace & Co.,*
964 F.2d 106 (2d Cir. 1992)…………………………………………………………………1

*Oppenheimer Fund, Inc. v. Sanders,*
437 U.S. 340 (1978)………………………………………………………………………1, 3

*Rodriguez-Cuervos v. Wal-Mart Stores, Inc.,*
181 F.3d 15 (1st Cir. 1999)………………………………………………………………..3

*Ruran v. Beth El Temple of West Hartford,*
226 F.R.D. 165 (D. Conn. 2006)……………………………………………………………1

*Sedona Corp. v. Open Solutions, Inc.,*
249 F.R.D. 19 (D. Conn. 2008)…………………………………………………………...1

**Statutes:**

Fed. R. Civ. P. 26(b)(1)…………………………………………………………………1

Fed. R. Civ. P. 37(a)(1)…………………………………………………………………1

Fed. R. Civ. P. 37(a)(3)(B)(iv)…………………………………………………………1

## PRELIMINARY STATEMENT

Plaintiff Tarakaa Bertrand ("Plaintiff" and/or "Bertrand") submits this Memorandum of Law in Support of Plaintiff's Motion to Compel Defendant Yale University ("Defendant" and/or "Yale") to Produce Documents. For the reasons set forth herein, Plaintiff's Motion to Compel should be granted because the discovery documents being sought are relevant to the current matter and will assist in determining whether Defendant's alleged reasons for terminating Plaintiff were pretextual and did not constitute cause pursuant to an employment agreement between the parties.

## STANDARD OF REVIEW

Parties may obtain discovery pertaining to any non-privileged information that is relevant to a claim involved in the pending litigation. Fed. R. Civ. P. 26(b)(1). It is well established that the scope of permissible discovery is very broad. *See Maresco v. Evans Chemetics, Div. of W.R. Grace & Co.*, 964 F.2d 106, 114 (2d Cir. 1992); *see also Ruran v. Beth El Temple of West Hartford*, 226 F.R.D. 165, 167 (D. Conn. 2006). As stated by the Supreme Court, discovery under Fed. R. Civ. P. 26(b) "encompass[es] any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

Pursuant to Rule 37(a)(3) of the Fed. R. Civ. P., "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection" if, *inter alia*, "a party fails to produce documents . . . as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B)(iv). The motion to compel "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). In addition to the foregoing, the party resisting discovery has the burden of proving why the discovery request should be denied. *Sedona Corp. v. Open Solutions, Inc.*, 249 F.R.D. 19, 21 (D. Conn. 2008).

1

## FACTUAL BACKGROUND

Plaintiff was employed by Defendant as the Head Women's Tennis Coach pursuant to an Employment Agreement executed on July 9, 2014 (the "Employment Agreement"). The Employment Agreement was for a five (5) year term, effective July 9, 2014. Pursuant to express terms within the Employment Agreement, Defendant could terminate Plaintiff at any time for "cause". The Employment Agreement specifically defined cause as: "a conviction of a felony or of any criminal offense involving theft or fraud; willful participation in any acts of fraud, theft or dishonesty; material violation of any rules of the University, the NCAA, or the Ivy League."

By letter dated April 15, 2015, Thomas Beckett, Director of Athletics for Defendant, notified Plaintiff that Plaintiff had been terminated as of the date of the letter (the "Termination Letter"). The Termination Letter specified that Plaintiff was terminated for, *inter alia*, secondary violations of the National Collegiate Athletic Association's ("NCAA") regulations and University policies and procedures.

Plaintiff contends that Defendant did not have cause to terminate her and that Defendant breached the Employment Agreement. Pursuant to the terms of the Employment Agreement, if Plaintiff is terminated without cause, she is entitled to be paid for the remaining balance of the Employment Agreement, i.e. four (4) years and three (3) months, plus benefits.

On or about September 29, 2015, Plaintiff served her First Request to Defendant for the Production of Documents, wherein Plaintiff requested that Defendant provide "[a]ll documents referring or relating to any secondary violation by a Yale coach or assistant coach of Yale, NCAA and/or the Ivy League rules, during the period of January 1, 2010 through June 30, 2015, and the treatment meted out for each violation" ("Plaintiff's Request"). A true and correct copy of Plaintiff's Request is annexed hereto as Exhibit A. In its formal response dated November 4, 2015, Defendant objected to Plaintiff's Request, stating that Plaintiff's Request was overbroad,

2

burdensome, not relevant to lead to the discovery of admissible evidence and a violation of the privacy interests of the persons who are not parties in this matter.

By letter dated November 12, 2015, Plaintiff's counsel reiterated its request that Defendant produce documents in accordance with Plaintiff's Request. However, by letter dated November 19, 2015, Defendant once again rejected Plaintiff's Request, stating that such documents were not pertinent in a breach of contract action. Thereafter, by letter dated November 25, 2015, Plaintiff's counsel repeated its request again, stating that the aforementioned documents can help to determine whether Defendant's stated reasons for terminating Plaintiff constitute "cause" pursuant to the Employment Agreement. The parties further conferred about Plaintiff's Request and have been unable to reach an agreement.

## ARGUMENT

### PLAINTIFF'S DISCOVERY REQUEST IS RELEVANT PURSUANT TO THE FED. R. CIV. P 26(B)(1) BECAUSE THE REQUESTED DOCUMENTS WILL ASSIST IN DETERMINING WHETHER DEFENDANT BREACHED THE EMPLOYMENT AGREEMENT

As previously stated, the documents requested during discovery must be reasonably related to any issue that is or may be related to the matter. *See Oppenheimer*, 437 U.S. at 351. "[W]hen offering comparative evidence, the relevant inquiry is whether 'the individuals with whom [s]he seeks to be compared 'have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances....'" *Ferguson v. TD Bank, N.A.*, 268 F.R.D. 153, 159 (D. Conn. 2010)(quoting *Rodriguez-Cuervos v. Wal-Mart Stores, Inc.*, 181 F.3d 15, 21 (1st Cir. 1999)).

Plaintiff's Complaint states that Defendant did not terminate Plaintiff for cause, as required by the Employment Agreement. Plaintiff alleged that Defendant's compilation of Plaintiff's minor transgressions, as set forth in the Termination Letter, is an attempt to manufacture cause

3

when none exists.  Upon information and belief, other coaches and assistant coaches who worked

or continue to work for Defendant were not terminated for committing secondary NCAA

violations.  In this regard, Plaintiff contends that her termination based upon the alleged secondary

NCAA violations constitutes grossly disproportionate treatment in comparison to Defendant's

treatment of other coaches who also committed secondary NCAA violations. Accordingly,

Plaintiff requested documents pertaining to other secondary violations committed by coaches and

assistant coaches, which Defendant refused to produce.

The aforementioned documents will assist in determining whether Defendant's alleged

reasons for terminating Plaintiff constitute "cause" under the Employment Agreement, and are

therefore relevant to this matter.  Said documents will confirm whether other coaches and assistant

coaches who worked or continue to work for Defendant were disciplined similarly to Plaintiff for

committing similar violations.  If these coaches and assistant coaches were not terminated for

committing similar violations, documents regarding how those violations were handled would

support Plaintiff's argument that Defendant's stated basis for terminating her was pretextual and

did not constitute "cause" under the Employment Agreement.  Accordingly, Plaintiff's request for

such documents is relevant to her breach of contract claim.

## CONCLUSION

Based upon the foregoing, Plaintiff requests that the Court compel Defendant to produce

the aforementioned documents, grant Plaintiff reasonable attorneys' fees and any other such relief

as the Court deems just and proper.

4

Dated: New York, New York
       March 28, 2016

                                       Respectfully submitted,

                                         DEALY SILBERSTEIN
                                         & BRAVERMAN, LLP

                                         By: _____

                                             Milo Silberstein
                                       *Attorneys for Plaintiff Tarakaa*
                                       *Bertrand*
                                       225 Broadway, Suite 1405
                                       New York, New York 10007
                                       (212) 385-0066

                                       Barbara J. Collins
                                       Law Office of Barbara J. Collins
                                       557 Prospect Avenue, Floor 1
                                       Hartford, Connecticut 06105

## CERTIFICATION

I hereby certify that, on the above-written date, the foregoing Memorandum of Law in Support of Plaintiff's Motion to Compel Defendant to Produce Documents was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing, as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's system.

Milo Silberstein

# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---

TARAKAA BERTRAND,                                CIVIL ACTION NO. 15-CV-01128

        Plaintiff,

    v.

YALE UNIVERSITY,

        Defendant.

---

## PLAINTIFF'S FIRST REQUEST TO DEFENDANT
## FOR THE PRODUCTION OF DOCUMENTS

PLEASE TAKE NOTICE, that pursuant to Rule 34 of the Federal Rules of Civil

Procedure, Plaintiff Tarakaa Bertrand ("Bertrand"), hereby requests that, within thirty (30 days

of the date of service hereof, Defendant Yale University ("Yale") produce for inspection and

copying the documents described in the following requests that are within Yale's possession,

custody or control.  Please produce all documents by mail, hand delivery or electronic mail to:

Milo Silberstein, Esq., Dealy Silberstein & Braverman, LLP, 225 Broadway, Suite 1405, New

York, New York 10007, msilberstein@dsblawny.com.

## DEFINITIONS

1.    "Bertrand" shall mean Tarakaa Bertrand.

2.    "Yale" shall mean Yale University and all its officers, directors, employees, partners,

affiliates, consultants and agents.

3.    "Employee" refers to any person, including but not limited to all officers, executives,

managers, supervisors, professionals, hourly and salaried personnel, who were employed on a

full or part-time basis or on a temporary or permanent basis.

4.      "Communication" means correspondence and all other transmittals of information (in the form of facts, ideas, inquiries, or otherwise).

5.      "Documents" shall include any writing or record of any type or description, including but not limited to originals (or, if applicant lacks the original, whatever type of copy it has), non-duplicative copies and copies with marginal notes, of agreements, correspondence, e-mail correspondence, letters, telegrams, inter-office and intra-office communications, memoranda, reports, records, instructions, specifications, notes, notebooks, scrapbooks, diaries, minutes, minutes of meetings, plans, drawings, sketches, blueprints, photographs, photocopies, charts, curves, descriptions, invoices, purchase orders, bills of lading, motion pictures, recordings, published or unpublished speeches or articles, publications, transcripts, and any other retrievable data however recorded, memorialized or preserved, in the possession, custody or control of applicant or known to applicant, wherever the same may be located, however produced or reproduced, including any non-identical copy, where differing from an original or another version thereof because of any alterations, notes, comments or other material contained thereon or attached thereto, or otherwise, and whether a draft or a final version.

6.      "Describe" means to specify in detail and to particularize the contents of the answer to the question and not just to state the reply in summary or outline fashion.

7.      "Personnel file" means not only applications for employment, evaluations, performance-related documents and the like, commonly kept in some central place and called by that name or something similar, but also all other documents concerning or primarily concerning the person referred to, regardless of where kept and regardless of by whom prepared, including notes taken during conversations with the person, notes taken during conversations about the person, memoranda and letters exchanged with the person and those exchanged with other persons, but

concerning the person, correspondence with any employment service concerning the person, records of all communications with other employees concerning the person, investigative files and reports concerning or substantially concerning the person identified.

8.   "Concerning" means relating to, referring to, describing, evidencing or constituting.

9.   "Address" shall mean the present or last known street name and number, city or town, state and zip code of the person or entity in question.

10.   "All/Each" term means "all" and "each" shall be construed as all and each.

11.   "And/Or." The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

12.   "Number." The use of the singular form of any word includes the plural and vice versa.

## INSTRUCTIONS

1.   Pursuant to Rule 26(b) of the Federal Rules of Civil Procedure and Local Rule 26(e), where a claim of privilege or work product protection is asserted in response to a request for documents or electronically stored information, Yale must provide the following information in the form of a privilege log:

  a.   The type of document or electronically stored information;

  b.   The general subject matter of the document or electronically stored information;

  c.   The date of the document or electronically stored information;

  d.   The author of the document or electronically stored information; and

  e.   Each recipient of the document or electronically stored information.

2.   Yale shall produce the documents requested below in electronic format where possible.

3

3.      Pursuant to Rule 34(b) of the Federal Rules of Civil Procedure, the documents produced should be organized and labeled to correspond with the request to which they are responsive.

4.      If any document requested herein was formerly in Yale's possession, control, or custody and has been lost or destroyed, or otherwise disposed of, Yale is requested to submit in lieu of any such document a written statement: (i) describing in detail the nature of the document as to its contents; (ii) identifying the person(s) who prepared or authored the document and, if applicable, the person(s) to whom the document was sent and indicated or blind copies; (iii) specifying the date on which the document was prepared or transmitted; and (iv) specifying, if ascertainable, the date on which the document was lost or destroyed and, if destroyed, the conditions of and reasons for such destruction and the persons requesting and performing the destruction.

5.      If any document relates in any manner to a meeting or to any other conversation, all participants in the meeting or conversation are to be identified.

6.      This document request is a continuing one and any document obtained subsequent to production which would have been produced had it been available or its existence been known at the time of production specified herein is to be supplied herewith.

7.      All responsive electronically stored information ("ESI") shall be produced in the format outlined in Appendix 1 and according to the ESI Guidelines contained in Appendix 2.

## DOCUMENTS REQUESTED

1.  All documents constituting, referring or relating to the contract, effective July 9, 2014, between Yale and Bertrand (the "Contract").

2.  All drafts and non-duplicate copies of the Contract that bear any annotations and/or markings.

4

3. All documents constituting, referring or relating to negotiations of the Contract.

4. All documents constituting, referring or relating to discussions with Bertrand before execution of the Contract.

5. Yale's Human Resources file[s] on Bertrand.

6. All drafts and non-duplicate copies of the termination letter, dated April 15, 2015, from Thomas A. Beckett ("Beckett") to Bertrand (the "Termination Letter") that bear any annotations and/or markings.

7. All documents scheduling, referring or relating to the April 9, 2015 meeting mentioned in the Termination Letter.

8. All documents containing a review, comments on, or discussions of the April 9, 2015 meeting.

9. All documents constituting, referring or relating to the alleged "inappropriate communications" and/or "comments" mentioned in the first bullet point of the Termination Letter.

10. All documents identifying the source or sources of the allegations set forth in the first bullet point of the Termination Letter.

11. A copy of each NCAA regulation referred to in the second bullet point of the Termination Letter.

12. All documents constituting, referring or relating to Bertrand's alleged response[s] to students, as alleged in the second bullet point of the Termination Letter.

13. All documents identifying the source or sources of the allegations set forth in the second bullet point of the Termination Letter.

5

14. A copy of each Yale policy, rule and/or procedure that Bertrand allegedly violated, as alleged in the third bullet point of the Termination Letter.

15. All documents constituting, referring or relating to the alleged violation specified in the third bullet point of the Termination Letter.

16. All documents constituting, referring or relating to Beckett's alleged authority to issue a directive to Bertrand, as alleged in the antepenultimate paragraph of the Termination Letter, that contacting either players or coaches regarding what Bertrand and Beckett discussed on April 9, 2015 would be viewed as retaliatory and a serious offense.

17. All documents constituting, referring or relating to Bertrand's allegedly contacting her Assistant Coach regarding her discussion with Beckett on April 9, 2015, as alleged in the antepenultimate paragraph of the Termination Letter.

18. All documents constituting, referring or relating to any notice or warning given to Bertrand at Yale before her April 9, 2015 meeting with Beckett.

19. All documents, that (a) identify each person present for the whole or any part of the April 9, 2015 meeting, referred to in the Termination Letter, and (b) state, in whole or in part, what was said or discussed during the meeting.

20. All documents referring or relating to Matej Zlatkovic, and/or any other coach or assistant coach, watching one or more recruits hit or otherwise practice while on the Yale campus during the period from January 1, 2014 to June 30, 2015.

21. A copy of each specific NCAA rule and Ivy League rule that Bertrand is alleged to have violated.

22. All documents that refer or relate to each alleged violation by Bertrand of a Yale rule, NCAA rule and /or Ivy League rule.

23. All documents constituting, referring or relating to evaluation of Bertrand's performance of her job at Yale.

24. All documents referring or relating to the disciplining and/or termination of any Yale sports team coach, assistant coach or other member of the coaching staff during the period from January 1, 2010 to June 30, 2015.

25. All documents referring or relating to any secondary violation by a Yale coach or assistant coach of Yale, NCAA and/or the Ivy League rules, during the period from January 1, 2010 to June 30, 2015, and the treatment meted out for each violation.

26. All documents referring or relating to Bertrand that were sent to and/or received from any member of the Dawson and/or Amos families.

27. All documents referring or relating to Bertrand that are contained in Yale's files on members of the Dawson and/or Amos families.

28. All documents constituting, referring or relating to Yale reporting to the NCAA any of Bertrand's alleged violations of NCAA rules.

29. All documents constituting, referring or relating to issuance or withdrawal of a "letter of distinction" or a "likely" letter for any student-athlete at Yale during the period from January 1, 2010 to June 30, 2015.

30. All documents constituting, referring or relating to any instruction by Margit Dahl, Debra Johns and/or Beckett regarding recruiting Caroline Amos and/or Caroline Xie.

31. All documents referring or relating to recruiting Caroline Xie, including communications by Ms. Xie regarding Bertrand.

32. All documents referring or relating to recruiting Amy Yang, including communications by Ms. Yang regarding Bertrand.

7

33. All documents referring or relating to recruiting Caroline Amos, including communications by Ms. Amos regarding Bertrand.

34. All documents constituting, referring or relating to communications between Bertrand and Margit Dahl.

35. All documents constituting, referring or relating to communications between Bertrand and Debra Johns.

36. All documents referring or relating to Bertrand in Beckett's possession, custody or control.

37. All documents referring or relating to Bertrand in the possession, custody or control of Peter Salovey, President of Yale.

38. All documents referring or relating to Bertrand in the possession, custody or control of Barbara Chesler, Senior Associate Athletic Director Varsity.

39. All documents referring or relating to Bertrand in the possession, custody or control of Angela Gleason, the faculty liaison to the women's teams.

40. All documents referring or relating to Bertrand in the possession, custody or control of Francine Georges.

41. All documents referring or relating to Bertrand in the possession, custody or control of Forrest Temple.

42. All documents referring or relating to Carolyn Xie and/or Caroline Amos that were, or still are, in the possession, custody or control of Fritz Rodriguez, former Yale admissions liaison to athletics.

43. All documents containing, referring or relating to comments regarding Bertrand by Meghan McMahon.

8

44. All documents containing, referring or relating to comments regarding Bertrand by Hanna Yu.

45. All documents containing, referring or relating to comments regarding Bertrand by Ree Ree Li.

46. All other documents referring or relating to the alleged grounds for Bertrand's termination.

47. All other documents referring or relating to the claims or defenses in this action.

48. All written reports received from each individual that Yale proposes as an expert witness in this action.

49. All documents that Yale intends to use for any purpose at trial or during depositions to the extent not otherwise produced.

Dated: New York, New York
      September 29, 2015

DEALY SILBERSTEIN &
BRAVERMAN, LLP

By:

Milo Silberstein

*Attorneys for Plaintiff Tarakaa Bertrand*
225 Broadway, Suite 1405
New York, New York 10007
(212) 385-0066

Barbara J. Collins
Law Office of Barbara J. Collins
557 Prospect Avenue, Floor 1
Hartford, CT 06105

9

## APPENDIX 1

### Plaintiff's Requested Electronically Stored Information Production Format

All references to "documents" in any of Plaintiff's requests shall be interpreted to include electronically stored information ("ESI"). ESI includes all types of computer-based information and electronic information stored in any medium, including but not limited to email.

The responding party shall disclose and produce all responsive ESI as it is kept in the usual course of business or must label all responsive ESI to correspond to the categories in the relevant discovery request or disclosure.

Plaintiff requests that the responding party disclose and/or produce all ESI that is relevant, not privileged, and reasonably accessible. The responding party must also identify, by category or type, the sources containing potentially responsive information that it is neither searching nor producing. The identification should, to the extent possible, provide enough detail to enable Plaintiff to evaluate the burdens and costs of providing the discovery and the likelihood of finding responsive information on the identified sources. However, the responding party's identification of sources of ESI as not reasonably accessible does not relieve the party of its common-law or statutory duties to preserve evidence.

Plaintiff requests that all ESI be produced in "native" format, together with (a) well-formed comma separated values (CSV) exported format and (b) an "imaged" file with the corresponding "image load file," "OCR text file," and the "associated metadata database."

10

E-mail shall be produced in electronic form in a manner that preserves the relationship between each e-mail and all of its attachments, as well as in "imaged" files. Information from each e-mail header field should be produced in an "associated metadata database." Any attachments to an e-mail should be produced in the electronic form in which they ordinarily are maintained, as well as in an "imaged" file with the corresponding "image load file," "OCR text file," and the "associated metadata database."

In all ESI productions, all available information about unitization (including the production number of the first and last page of each document), internal linkages, information about attachments (including information sufficient to identify the parent and child relationships of all documents and ESI that are or have attachments) and information about hyperlinked fields should be provided. Unless a production of documents/ESI can be made on a single DVD, Plaintiff requests that the production be made on one or more hard drives.

The key concepts are explained below.

1. **Native:** the format in which the electronically stored information was originally created (*e.g.*, Microsoft Word, Microsoft Excel, Microsoft Access, PeopleSoft) and as it is kept in the ordinary course of business. A file path to the native file shall be provided in the metadata database as described in more detail below.

2. **Imaged:** a TIFF image converted from the native file as it was originally created.

11

    a. All images may be in black-and-white format.

    b. Bates numbers shall be branded to the images so that the numbers print on the bottom right corner of the document.

    c. Images shall be single-page TIFFs or one TIFF file for each page (not multi-page TIFFs or one TIFF file for document) at 300 dpi.

    d. Each image will bear any applicable confidentiality language pursuant to the parties' protective order on the bottom right corner of the document.

3. **Image Load File:** A load file in a DII standard load format which provides:

    a. the document number for each image;

    b. all available information regarding unitization (including the production number of the first and last page of each document);

    c. the full path name(s) of each TIFF that represents an image;

    d. all available information regarding attachments (including information sufficient to identify the parent and child relationships of all documents and ESI that are or have attachments);

    e. the document boundaries for each document or family member grouping consisting of the following:

12

i.      Each record, including the last record, should be

terminated with a carriage return or carriage return/line

feed pair;

ii.     Note that the first record for any given document indicates

that fact by flagging column 4, and lists the total number of

pages in column 7;

iii.    The load file shall be in the order that appropriately

corresponds with each image file;

iv.    The following represents the format of a standard

DII load file:

DII Files:

*E-Form:*

@FULLTEXT DOC; Record 1

@T TOS00131253

@BATESBEG TOS00131253

@BATESEND TOS00131253

@C PARENTID

@C ATTCHID

@D @I\TOS_VOL_022\IMAGES\001\

13

TOS00131253.tif

4. **OCR Text File:** An OCR text file which corresponds to each imaged document shall be provided as follows:

      a. One OCR text file for each imaged document, not one OCR text file for each imaged page;

      b. Images shall be one TXT file for each document in multipage OCR format;

      c. OCR text located in the same directory as the images;

      d. OCR text files should be in ascii format

      e. Lines and breaks in the original imaged document should be preserved and lines should be separated by line feeds or CR-LF pairs; and

      f. The OCR file name should be the same as the name of the image file, followed by .txt.

5. **Associated Metadata Database:** a database shall be provided that extracts metadata (including but not limited to field headings and contents, information about unitization and internal linkages, information about attachments, and information about hyperlinked fields) into fields in a database load file, and also

14

includes a file path link to the native file. The fielded data should adhere to the following parameters where possible:

    a. Avoid escape characters, carriage return/line feed combinations, embedded separators and embedded carriage returns in all fielded data;

    b. Bates number fields cannot contain spaces or the / \ characters;

    c. Data files should use standard Concordance delimiters;

    d. All data types should be delimited, not just text;

    e. Multi-value fields should use semi-colons ";" as their separator;

    f. Data cannot contain tabs or carriage returns;

    g. Each record including the last record should be terminated with a carriage return or carriage return/line feed pair;

    h. The preferred date format is MM/DD/YYYY;

    i. The data file should contain a header; and

    j. The following is a sample data file:

    6. **Exception Files**: All files that cannot be produced or imaged due to technical difficulties shall be identified as exception files and identified on a log listing the file's name, custodian, and reason for the exception. Common exception files include, without limitation, corruption, password protection, digital rights

15

management, or proprietary software associated to the file.

## APPENDIX 2

## ESI Guidelines

These Guidelines are intended solely to facilitate the production of ESI ("electronically stored information"), to avoid misunderstandings concerning ESI, and to highlight good-faith disagreements about ESI so that they may be promptly resolved. They are not intended to expand (or contract) counsel's obligations under the Rules of the American Arbitration Association.

1.      **What ESI Is.** ESI includes: e-mail; text messaging (corporate and internet based); voice messaging systems; electronic files stored on servers, desktops, laptops, and other removable media; and electronic data stored in databases.

2.      **E-mail Collection.** During collection of e-mail the complete mailbox should be captured. This includes sent folders, deleted folders, archived folders, and all other folder structures within a mailbox.

3.      **Purging Systems.** "Self-purging" or "sweep-and-keep" policies are often implemented on an organization's e-mail system. A self-purging system automatically deletes e-mail messages located in specific folders after a certain number of days. Sweep-and-keep systems collect and retain all incoming or outgoing e-mail, regardless of content. Self-purging systems should be

17

deactivated if they are in violation of the litigation hold. Sweep-and-keep systems need not be deactivated, but steps should be taken to ensure that the "swept and kept" e-mail is collected as part of the collection of e-mail generally.

4.   **Locations of ESI.** All network servers, desktops and laptops, removable media (*e.g.*, hand held devices, iPods, thumb or flash drives, external hard drives, tape, CD or DVD) containing ESI should be considered during collection. In addition, counsel should not overlook these locations for ESI:

• **Remote Locations.** Branch, satellite, or subsidiary offices.

• **Internal Websites.** Often organizations implement internal or intranet websites, which, of course, contain ESI.

• **Third Party Storage.** Off-site or third-party data storage either in physical removable media or real-time data hosting/archive (*e.g.*, e-mail archival services provided by ZANTAZ, Inc. or Iron Mountain Incorporated).

• **Personal Computers.** Employees' or contractors' personal computers often contain ESI.

• **Former Employees.** ESI from transferred or past employees may have been moved from a shared location to a separate employee archive location.

• **Old Systems.** Decommissioned or old computer systems no longer in use may contain ESI and should also be considered during collection.

18